AMERICAN AUTOMATIC RY. SWITCH CO. v. SHEPHERD AUTOMATIC SWITCH CO. et al.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1911.)

No. 2,278.

PATENTS (§ 328*)—INFRINGEMENT—AUTOMATIC RAILWAY SWITCH.

The Crampton patent, No. 531,782, for an automatic railway switch, construed, and held not infringed by the Shepherd switch, the method of operating which is substantially different.

Appeal from the Circuit Court of the United States for the Middle District of Alabama.

Suit in equity by the American Automatic Railway Switch Company against the Shepherd Automatic Switch Company and others for infringement of letters patent No. 531,782 for a railroad switch, issued to Stewart H. Crampton January 1, 1895. Decree for defendants, and complainant appeals. Affirmed.

The following is the opinion of the Circuit Court by Jones, District Judge:

The American Automatic Railway Switch Company filed its bill against the Shepherd Automatic Switch Company et al. to enjoin the infringement of three patents of which it is the owner issued for a new and useful improvement in railroad switches. Two of these patents were issued to M. S. Farmer, but need not be further noticed, since complainant very properly admitted that their rights rest solely on the Crampton patent, No. 531,782. The pressure of business upon the court prevents much discussion of the contentions of the parties, but the ability displayed in the argument and the importance of the

---

case to the parties make it proper that the court outline the reasons for its conclusions, reserving for another time the filing of a more extended opinion. I think it will conduce to a better understanding of the issue whether there is substantial identity of the operation and of the different mechanisms by which the switches operate and co-operate to produce the result claimed for them, respectively, to give in parallel columns the essential features of the mechanism and mode of operation of the two switches.

After a careful reading of the testimony and claims of the Crampton patent, and an inspection of the somewhat crude models, and the illustrations of their modes of operation as given by counsel in practical working, I am satisfied that what follows is a fair and just statement of the differences between the mechanism and operation of the two switches.

## CRAMPTON'S SWITCH.

Crampton's shifting lever is substantially wedge-shaped and *must be* substantially wedge-shaped to operate in his construction.

Crampton's Switch Point is *not completely thrown* until the depending bar *reaches the end of his shifting lever.*

The forward end of Crampton's shifting lever is not shifted *until the depending bar reaches the rear end of said lever.*

Crampton's lever *operates on two fulcrums* (one of the ends of the slot B', and one of the pins C C') to completely throw his switch point.

Crampton's depending bar furnishes the power for throwing the switch point *and shifting the forward end of the lever.*

During the shifting of the forward end of Crampton's lever, pin C or C' is his fulcrum and *the depending bar is his power.* (In the modified construction illustrated by the model produced by complainant's counsel at the final hearing, the switch point connecting rod is Crampton's fulcrum for shifting the forward end of his lever, while the depending bar is his power.

Crampton's switch point is connected by rod V *to the rear end* of his shifting lever.

The forward end of Crampton's lever is shifted gradually by the action *of the depending bar.*

Crampton's lever and switch point are only moved *when his lever is acted upon by the depending bar.*

Crampton's lever and switch point

## SHEPHERD'S SWITCH.

Shepherd's shifting lever has parallel sides.

Shepherd's switch point *is completely thrown* when the depending bar has travelled *half the length of the shifting lever.*

The forward end of Shepherd's shifting lever is shifted *immediately after the depending bar passes the switch point connection.*

Shepherd's lever *has but one fulcrum* (one side of the forward end of the box) *to completely throw his switch point.*

Shepherd's depending bar only furnishes the power for throwing the switch point. His spring furnished the power for shifting the forward end of the lever.

The forward end of Shepherd's lever is shifted on the depending bar as a fulcrum, *the power being furnished by the spring* through the connecting rod.

Shepherd's switch point is connected to his shifting lever *some distance from the rear end,* thereby securing an entirely different movement of said lever.

The forward end of Shepherd's lever is shifted *quickly* by the action *of the spring.*

Shepherd's lever and switch point are given an initial throw by his spring as soon as the switch connection is unlocked. His lever *is again thrown by the spring* just after the depending bar passes the switch point connection.

Shepherd's lever *is not locked. It*

*are rigidly locked* against movement in any direction.

Crampton's construction will not permit a car to come off the siding when his lever is locked for main line position (or vice versa) *without serious damage to the device.*

Crampton has no spring under compression when his shifting lever is locked.

Crampton has no spring for shifting the forward end of his lever.

Crampton has no means by which an initial throw is given to his lever and switch point for the purpose of lessening the strain on his depending bar.

Crampton uses no spring in his construction.

Should Crampton's switch point be obstructed in its movement serious damage would result to the shifting mechanism.

Crampton's locking mechanism consists of *five* elements.

Crampton's depending bar has passed beyond the shifting lever when the locking lever is operated.

Crampton's depending bar does not complete its work until it has passed the locking lever H, which is some distance beyond the shifting lever.

Crampton's locking mechanism consists of *three pointed levers,* the ends of which are connected by two rods, *none of which move in a vertical plane.*

Crampton's locking and unlocking levers are operated by the depending bar from the car *before* and *after* said bar engages the switch shifting lever.

Crampton has a pin located on each side of lever A which said pins serve as second fulcrums against which the lever A operates to complete the throw of the switch point and shift the forward end of the lever.

Crampton cannot completely throw his switch point without *two fulcrums.*

In the changed construction of Crampton's Exhibit Switch, Cramp-

*is at all times* free to move from side to side.

Shepherd's construction permits cars to travel in the direction of the switch point *when the switch rod is locked in either direction.*

Shepherd has.

Shepherd has.

Shepherd's spring does this.

Shepherd uses a double acting spring, *which seems to be new in this art,* said spring being essential to the operation of Shepherd's parallel sided lever.

Shepherd's double acting spring prevents breakage, should his switch point be obstructed in its movement.

Shepherd's locking mechanism consists of but *three elements,* each of which is substantially *of a different construction* from any one of Crampton's five elements.

Shepherd's depending bar is holding the switch rod (through the shifting lever) *in a proper position for locking,* when the latch is operated.

Shepherd's depending bar has *no work* to do after passing a short distance beyond the point where the switch rod connects with the shifting lever.

Shepherd's locking mechanism consists of a *locking bolt* and *two latches,* which said bolt and latches are so constructed that the *locking bolt moves in a vertical plane.*

Both of Shepherd's latches are engaged by the bar *while* in engagement with the shifting lever.

Shepherd has but one fulcrum for throwing the switch point.

In Shepherd's construction one of the sides of the box is the *only fulcrum* for throwing the switch point.

Shepherd's switch point connection *never* acts as a fulcrum. During the

ton's *switch point connection* acts as the second fulcrum.

Crampton shows and described "a depending bar" and "second fulcrums."

After the fulcrum changes in Crampton's device the depending bar must shift the forward end of lever A and *simultaneously complete the throw* of the switch point; and while doing this *double duty* there is very little leverage.

Crampton has *an* axis B about which his lever turns when said axis is at *each* end of the slot B'.

throw of the switch point it is the means by which the leverage *is transmitted to the switch point.* During the throw of the forward end of the lever it is the means by which power of the spring *is transmitted to the lever.* In the first instance *it is the work,* while in the second *it is the power.* In the first instance the *side of the box is the fulcrum* against which the lever bears. In the second instance the *depending bar from the car is the fulcrum* against which the lever bears.

Shepherd has by his construction eliminated one of these elements. *The only second fulcrum Shepherd has is the element shown and described by Crampton as "A depending bar."* After Shepherd's fulcrum changes his depending bar *has only the rear latch to operate.*

Shepherd has *one axis* when his lever fulcrums against *one side* of the box, and *another axis* when his lever fulcrums against the *opposite side* of the box. Shepherd's axes are *not movable* as they cease to be axes the moment the lever turns upon some other point.

## CRAMPTON'S CLAIM 3.

"In a switch shifting mechanism the combination of a depending bar from a car,
of a switch shifting lever
with a connection to a switch point
and pivoted bars or levers
with connecting rods
so arranged that when operated by the depending bar, they automatically unlock,
and relock the shifting lever
and assume their former positions substantially as set forth."

## COUGHLIN'S CONSTRUCTION.

Not shown in the drawing but referred to in the specifications, line 94, page 1
Lever D
Pin $d'$
Levers $f^3$ and $f^5$
Rod $f$
By throwing lever $d$ off center

By throwing lever $d$ off center.
Accomplished by the action of springs $m$ on the pointed end of rod $f$

From this statement of Crampton's claim 3, and Coughlin's construction which shows the prior art, it is a matter of grave doubt as to whether Coughlin did not anticipate Crampton's claim 3.

A device may be within the terms of the claims of a patent in suit, and yet not be an infringement thereof, if the principles of the two devices are not substantially identical. Standard Computing Scale Company v. Computing Scale Company, 125 Fed. 639, 61 C. C. A. 541.

To sustain a claim of infringement of a patented machine, three things must be found: First, identity of result; second, identity of means; and, third, identity of operation. In a patented combination the device in one mechanism, to be the equivalent of a device in another, must perform the same function and perform that function in substantially the same manner as the

thing of which it is alleged to be an equivalent. Rowell v. Lindsay, 113 U. S. 97, 103, 5 Sup. Ct. 507, 28 L. Ed. 906. Walker on Patents, § 354.

A substituted part in a patented combination, in order to constitute an equivalent which will not avoid infringement, must not vary in any manner the idea of means, and while it may perform some new or additional function, and still be an equivalent, it must perform all the functions of the element for which it is substituted in substantially the same way, and be a mere change of parts and form involving no inventive skill, but suggested by the patented invention itself to every person skilled in the particular art. If it not only performs the functions of the element for which it is substituted, but introduces into the combination a new idea or a much more extended development of the idea of means, it is not an equivalent, but a patentable invention. Dey Time Register Co. v. Syracuse Time Recorder Co. (C. C.) 152 Fed. 440. See, also, Westinghouse Airbrake Co. v. New York Airbrake Company, 119 Fed. 874, 56 C. C. A. 404.

Doubts on the question of mechanical equivalents should be resolved against the patentee where the patentability of the claim sued on is doubtful in view of the prior art. Upon the question of the mechanical equivalency of defendant's device with complainant's patent, any doubt as to equivalency should be resolved against the patentee when the claim contains the words "described as substantially set forth." Cleveland Foundry Co. v. Detroit Vapor Stove Co. (C. C.) 131 Fed. 740.

It is unnecessary to pass upon the contention that the claim 3 in Crampton's patent was anticipated by the Coughlin patent, but from the statement of the claims of the two patents given above it is at least a matter of some doubt.

Applying the principles stated above to the facts of this case, I do not find that there is such identity of result, means, and operation as entitles complainant to any relief.

E. H. Cabaniss and R. D. Johnston, Jr., for appellant.

B. P. Crum, Fred S. Ball, Wm. H. Samford, and J. Lee Holloway, for appellees.

Before PARDEE and SHELBY, Circuit Judges.

PER CURIAM. The working of automatic railway switches through suitable devices upon or controlled from the car, such as a depending bar, is not new in the Crampton patent.

The methods of operating through shifting levers are so different between the Crampton switch and the Shepherd switch as pointed out by Judge Jones in his opinion in the court below that we are well satisfied no infringement of the Crampton patent of which the appellant has cause to complain was established in this case.

The decree of the Circuit Court is therefore affirmed.